■ P. Szanto
11 Shore Pine
Newport Beach CA 92657
949-887-2369

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2023 SEP -5 AM 11: 41

MARGARET BOTKINS, CLERK
CHEYENNE

# U.S. District Court
### District of Wyoming
2120 Capitol Avenue, Room 2131, Cheyenne WY 82001 (307) 433-2120

| | |
|---|---|
| USA<br><br>vs<br><br>Peter Szanto,<br><br>   Defendant | **Case # 23-cr-95 SWS**<br><br>**Defendant's Need**<br><br>**For Appointed Counsel** |

Comes now the Defendant responding to the Court's query regarding Peter Szanto's need for the Federal Public Defender.

**1. The Prosecutor's Raging and Venomous Diatribe [DE 18] is Filled with So Much Obscene Misstatement that it is Scandalous!! The Prosecutor's Filing is Proper Subject for a Motion to Strike -- Said Motion to Strike that Despicable Paper Will Follow Forthwith**

The fundamental facts of Peter Szanto's activities in Wyoming are very simple – the totality of Szanto's acts was the hiring of counsel to aid in administration of Decedent Susan Szanto's Probate Estate:

23-cr-95          Response Regarding Need for Public Defender          pg. 1

Defendant Szanto (acting as administrator of his wife's estate [EXHIBIT A]) hired Wyoming attorney Mr. Boyd Wiggam to obtain a state court Probate stay while Szanto travelled to Wyoming to examine public records regarding mining and prospecting claims of his deceased wife.

For reasons unknown **and incomprehensible** to Defendant (<u>and without Szanto's approval in any manner</u>): Mr. Wiggam, solely by Wiggam's <u>**own prerogative**</u> and only based on **Wiggam's own personal decision**, proceeded in the US Bankruptcy court in Wyoming (case # 22-20240). AND NOT WYOMING'S STATE PROBATE COURT – as Szanto emphatically instructed Wiggam to do! Indeed, Mr. Wiggam's wholly personal decision to proceed in the Wyoming Bankruptcy court was by Wiggam's own judgment.

**As further conclusive proof** of Mr. Wiggam's intentional error, the Wyoming Bankruptcy judge, in open court, on the record, at the hearing of August 16, 2022, admonished Mr. Wiggam for impermissibly attempting to pursue, ***a Wyoming state court only***, Probate matter in Bankruptcy court rather than Wyoming's Probate court.

Therefore, the first matter of error in [DE 18] is at page 2 under the header "2." and states as follows: "which culminated in his initiating a bankruptcy proceeding in Wyoming for the purpose of invoking the Bankruptcy Code's automatic stay provision."

This is a knowingly false statement made by the prosecutor!!

A statement for which there is no discernable logic or actual proof.

Szanto invoked nothing, **every decision as to how to proceed, and in which court to proceed was made by Mr. Wiggam.**

Indeed, Mr. Wiggam's decision to proceed in the Bankruptcy court rather than Wyoming's Probate court **was Wiggam's alone**.

And, as matters of fact and law, Wiggam proceeding in Bankruptcy court rather than Probate court was in **absolute defiance** of the clear and very specific instructions given to Wiggam by Szanto.

## 2. Prosecutor's Knowingly False Statement Regrading Defendant's Failure to Make Mortgage Payments

At page 4 of [DE 18] prosecutor makes **yet another knowingly false** statement under paragraph "7.":

> "Since 2009, the defendant has refused to make any loan payments, and for the last decade at least he has spent countless sums of money litigating in state and federal courts in an attempt to prevent JP Morgan Chase from foreclosing on the Newport Beach Home as a result of his default."[1]

---

*1. Wyoming prosecutor simply cannot anoint herself with jurisdiction over a California loan between Defendant and Chase.  Her jurisdiction is not limitless.*
*The legal basis (a 225 year old ruling by US Supreme Chief Justice Marshall) regarding the local action rule – holding and settling that  all matters related to real property need be  litigated in the district where that realty is located will, forthwith, be the subject of a motion to dismiss based on lack of jurisdiction.*

### a. Peter Szanto's Dispute With Chase Bank -- Commenced in 2008-- That Dispute is Still Proceeding -- Based on Chase's Reneging Upon the Parties' Settlement Agreement

Before 2008, when Chase Bank acquired Washington Mutual Bank, Defendant was a loan broker for Washington Mutual (WAMU). Defendant's volume of loans finalized was the highest of any person at WAMU. Due to this level of loan origination performance, Defendant was afforded many special benefits from WAMU: most particularly very special rates and terms upon loans Defendant procured for his own homes. One of those loans is the current subject of dispute in this action.

Chase Bank, upon acquiring WAMU stopped the "COURSE OF CONDUCT" contracts, actions and arrangement between WAMU and Defendant. Chase Bank's actions which, attempted impermissibly to raise the effective cost of Defendant's borrowing upon his own home, as well impair Defendant's income in brokering loans for others is the subject of the currently on-going litigation between Chase Bank and Defendant.

The dispute was settled in 2012 only after a Los Angeles jury had been selected. Chase was terrified that each of the jurors expressed dislike for the WAMU – Chase combination.

The *voir dire* question Defendant asked all of the prospective jurors was whether they double-checked (recounted) the money the Chase teller handed them. All jurors responded in the affirmative. The juror's lack of trust of Chase was patent and obvious.

The terms of the settlement were that Defendant would pay Chase $1million for reconveyance of the loan. **Defendant tendered the $1million, but Chase has consistently reneged on providing the reconveyance.**

The dispute is currently before the 9th Circuit Court of Appeals as Case # **No. 20- 36086.**

As further strenuous objection to Prosecutor's shocking foul-foul lie regarding Defendant's failure to make payments:

From the time in 2008 when the dispute between Chase and the Defendant commenced, Defendant **has made all payments,** in accordance with, and as instructed, by the judge under whose jurisdiction the dispute was proceeding at any particular portion of the case. (That is, due to Chase trying various "sneaky end runs" attempting to defeat California's sole and exclusive jurisdiction, the Chase dispute with Defendant has proceeded in many courtrooms. (***The present, within, criminal proceeding, is merely another of those efforts seeking to negate California's jurisdiction***.)

It is obvious from the context in which Prosecutor writes that all of her "facts" and "suppositions" plainly derive from conversations with Chase counsel or Mr. Wiggam. Chase counsel are all very aggressive in stating matters unsupported by facts, the record or even a modicum of truth.

Nothing is more shocking in this case than the Prosecutor accepting Chase's or Mr. Wiggam's false statements (outside the courtroom, without evidence) about the parties' dispute without investigation!!!!

### 3. Family Dispute in Oregon

The Szanto family dispute decided in Oregon, is likewise before the 9th Circuit Court of Appeals case No. 21-35151.

Prosecutor seeks to conjure speculative aid from an Oregon judge's OPINION. None of the Oregon judge's comments have any, or even remote, relevance to Defendant discovering that Mr. Wiggam, by his own decision, did not follow or pursue a purely state court Probate matter in Wyoming as specifically instructed to do so by Defendant.

### 4. Allegations Regarding $5 Million in Israel

In the 2022 dismissed Bankruptcy in California's Southern District, assets in Israel were explained as property belonging to Defendant's wife. Because Defendant has been unable to go to Israel to commence his wife's Israeli Probate, the actual facts regarding Defendant's wife's Probate estate and property in Israel are still not fully known.

Defendant explained the situation to the California court as follows. Because of Covid and massive amounts of time expenditure regarding his wife's final illness, Defendant was uncertain about the status of real estate owned by his wife **as her separate property**. Was there a loan? Did his wife own the property in tenancy with others? Was the property either a co-operative or condominium structure where the actual ownership was shares of stock in the property's corporation only-with the building and land owned by others?  Was the property subject to a ground lease, possibly

with rights of reverter, such that ownership was only in the air-space of the living areas of the property?

Defendant simply did not know. Defendant in his Southern California Bankruptcy plan, explained that he would go to Israel, commence his wife's Israeli Probate and ascertain facts which would yield a more clear value of what was at stake.

What result in Israel Defendant might obtain – or what additional investigation might be necessary -- was simply unknown.

Thereafter, the California Bankruptcy court dismissed the matter for lack of venue. As a totality, Defendant's wife's Israeli Probate remains open, because Defendant has been unable to travel to Israel to examine the property, review title records or make investigation from those who might be living at the property.

### 5. Domicile, "Resides at", Residence, Place of Employment and Many Others Are All Different Metrics of the Bankruptcy Process

First, and very much foremost, by his own admission, the San Diego Bankruptcy judge, by himself, determined he did not have proper venue jurisdiction to proceed in Defendant's San Diego Bankruptcy.

Therefore, regardless of the Prosecutor's **erroneous reliance** on the San Diego Bankruptcy judge's extra-jurisdictional comments -- comments

which, because of lack of venue are wholly outside the judge's jurisdiction to make such comments. <u>The only matter from San Diego upon which the Prosecutor may rely is the Bankruptcy judge's want of venue jurisdiction to make any comments at all</u>. IE, opinions are not allowed a judge about any matter noy validly before them. Lack of venue precludes all commentary!

Therefore, the San Diego Bankruptcy judge's various commentaries regarding Defendant and the propriety of venue were simply outside the bounds of the San Diego judge's jurisdiction.

For example:

> "28 U.S.C. § 1408, the statute permits a debtor to have more than one residence for venue purposes"
>
> *In re Handel*, BAP No. MW 99-068, at *1 (B.A.P. 1st Cir. Sep. 27, 2000)

Specifically, even though the Prosecutor has fun mocking Defendant as to comments about multiple residences, that is the current state of the law which supported Defendant's reasoning: residences are not domiciles and multiple residences (whether hotel or YMCA) are valid so long as they properly describe the facts of a particular situation.

Indeed, when Defendant filed in the San Diego district he did so because that district was the place from where his major source of income derived at that time. And that was the criterion for venue per the rules.

The venue question to which Defendant responded related to work and income and not where a party was domiciled or had family.

## 6. Prosecutor's Nonsense Allegation that Because Defendant Has Travelled to Singapore and Israel His Life is a Party and He Must Have Ability to Pay for Counsel

Defendant's spouse, Susan's final illness protracted from 2017 until the end of 2020.

Susan's pernicious and fatal medical condition necessitated that Defendant expend all of the resources available to him in an effort to save his wife's life.

Defendant's spouse, Susan, suffered and was afflicted by that very rare medical condition wherein her body can no longer metabolize iron. Consequently, tiny cuts or bruises, which would not heal became major life-threatening ordeals of bleeding, because the clotting power of the iron which had not metabolized was unavailable.

This very rare inability to metabolize iron condition simply has no on-going research or study in the USA. Therefore, Defendant brought his wife to Singapore and Israel where research for such iron metabolics defect are being carried-out.

**These were not pleasure trips or vacations.** These travels to research facilities in various nations, hospitals, clinics – as well payments to nurses, physicians, researchers, their facilities and laboratories  cost Defendant well  in excess of  $3million. Most of which is still owing.[2]

---

2. *One approach to paying the medical bills of the deceased is simply to walk away from those obligations. Defendant could not try to cheat the persons who tried, for four years to save his wife's life.*

The Prosecutor's implication of Defendant's fun and amusement in the four year nightmare of attempting to save his wife's life is just <u>one additional shocking absurdity</u> which mocks the terrible reality which was faced by Defendant during the time his wife was going through four years of pain, agony and thousands of horrible lesions on her face and body.

No doubt when Prosecutor received her "briefing" from Chase and Mr. Wiggam, she was not apprised of the very many difficulties faced by Defendant during the years when Chase intentionally reneged on its 2012 settlement obligations and commitments.

### 7. Prosecutor's Shocking Speculation About Defendant's Finances

Unfortunately, Defendant has heard the Prosecutor's hackneyed speculations -- **verbatim** – from Chase's counsel (especially Mr. Freed). As a matter of fact, Prosecutor's *"make statements without reality"* writing is so close to that of Mr. Freed, Defendant presumes that rather than investigate and asses the facts of this case, the Prosecutor was merely mesmerized by Mr. Freed and now merely repeats all he has said to her.

And thereafter, simply vowed to follow every bit of garbage, lying falsehood that Mr. Freed had convinced her as a false and fabricated reality.

No doubt, after many hours of listening to Mr. Freed's fantastic lies and nonsense, Prosecutor just concluded that Defendant needed to be arrested. Perhaps even put to death.

As to living in the Newport Beach home, Defendant is challenging the false and fraudulent foreclosure conducted by Chase Bank.

Defendant remains at the property, in conformance with California law, during that challenge.

Why would Defendant tacitly admit otherwise – *acts of grave legal significance as referred to in decided cases* -- by ceding the home to others whose claims are false, fraudulent and abusive of California's Civil Code (CCC) (most particularly CCC § 2924m).

As discussed earlier, Defendant has paid Chase in conformance with ORDERS from the dozens of judge's who have heard various portions of the dispute between Chase and Defendant. These many decisions have yielded instructions which Defendant has scrupulously followed.

### 8. Real Crimes the Prosecutor Should Be Pursing

In the constellation of facts regarding the Wyoming Bankruptcy as to the Probate Estate of Susan Szanto, the criminal conduct which the prosecutor **should be addressing** and **prosecuting** are these real crimes:

a) the Prosecutor is aware that Chase Bank went forward with a foreclosure on 8-15-22. However, because the Wyoming Bankruptcy court did not terminate the 11 USC § 362 stay until 8-16-22, that foreclosure on 8-15-22 was **criminally violative of**

**the stay provisions of 11 USC 362**. Chase Bank and its Trustee Quality Loan Service must be charged with that criminal conduct of going forward with a foreclosure in abject, knowing and direct defiance of the 11 USC 362 stay.

b) Mr. Boyd Wiggam was Defendant's counsel as to all matters for which Defendant is being prosecuted. Mr. Wiggam is *in peri delicto* (of equal fault) as to any and all matters of which Peter Szanto is charged. Mr. Wiggam should be arrested and charged equally as to those matters with which Peter Szanto is charged.

c) Mr. Wiggam's extortionate conduct.

Since August 2022, Mr. Wiggam has been demanding money from Peter Szanto on various theories related to his belief that his atrocious performance in the Bankruptcy court deserves additional compensation.

Peter Szanto is prepared to testify as to his belief that Mr. Wiggam's demands should be prosecuted as extortion. Because Mr. Wiggam is demanding money -- which if not paid -- has caused Wiggam to hand over Defendant's books, papers and files to the Prosecutor. (see section below as to Mr. Wiggam making good and carrying out his promise to hand over all of Defendant's materials to the United States Prosecutor).

## 9. Defendant's Need for Appointed Counsel

Ultimately this briefing seeks to persuade this Court that Federal appointed counsel should be provided to Defendant.

It is unfortunate the Prosecutor sought, in her paper, to submit so much false and irrelevant material. Thereby necessitating Defendant to respond in the initial portions of this paper.

### a. *Defendant's Search for Wyoming Counsel*

From the moment after Defendant was released from custody he began calling Wyoming attorneys.

The first Wyoming attorney Defendant called was his counsel from the events related to his wife's probate estate, Mr. Boyd Wiggam.

Mr. Wiggam stated that it was he, Wiggam, who had gone to the United States Prosecutor with concerns from August 2022. Mr. Wiggam stated that he simply turned over all of the material which Defendant had provided to him to the Prosecutor.

This surprised Defendant. Defendant inquired from Mr. Wiggam if the attorney client confidentiality privilege did prevent conversations with the Prosecutor as to Defendant's privacy? Or the turning over of papers to the Prosecutor without Defendant's consent? Mr. Wiggam stated that both confidentiality with a client's statements and privacy as to client records are any part of the law in Wyoming. Client privacy does not exist in Wyoming.

Mr. Wiggam stated that the papers provided by Defendant were now Wiggam's to do with as he pleased.

Mr. Wiggam told Defendant that the US Prosecutor had given him absolute immunity to testify against Defendant.

Thereafter, Defendant continued his search for Wyoming attorney representation.

After dozens of calls, inquiries and conversations, Defendant was quoted the cost of representation in this case at between $300,000.00 and $750,000.00

These quotations came from numerous attorneys throughout Wyoming. These quotes for representation of Defendant were obtained in the week before, Ms Hucke, of the public defender's office appeared on behalf of Defendant.

In the week since Ms. Hucke withdrew, Defendant has continued his efforts to secure Wyoming representation.

Now, however, because the case has received so much publicity, notoriety and conversation, the price for Defendant's representation has increased to current quotations between $500,000.00 and $1,000,000.00

These are prices which Defendant simply cannot afford and so must turn to the Court's leave for Public Defender representation.

### b. Defendant's Finances

Notwithstanding the financial representations already provided to the Court, here now are Defendant's essential financial details.

The Oregon Bankruptcy which Defendant commenced in 2016 is still proceeding. Presently approximately $3.5million of Defendant's money is being held by the Oregon Bankruptcy Trustee. Defendant is not afforded access to those funds. However, perhaps, this Court might intercede on Defendant's behalf with the Bankruptcy Trustee for release of some of those funds to use to pay for the defense in this case.

Presently, Defendant is still paying upon approximately $3million of debt related to his wife's final illness. Consistent payments are being made to pay that debt.

As Defendant has readily admitted at his bail hearing as well as to this Wyoming Court, his finances are limited in his ability to afford the very high cost of defending this matter.

Thereupon, Defendant would pray this Court allow the Public Defender to be assigned to this case.

DATED September 1, 2023  _____  Peter Szanto

## PROOF of SERVICE

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623

On the date indicated below, I personally served the within:

### Response

on the following by placing in postage pre-paid envelopes of the within document and mailing same as follows to:

> US Attorney
> POB 668
> Cheyenne WY  82003

said mailing of copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated September 1, 2023  _____  M. Reynolds

Electronically Filed by Superior Court of California, County of Orange, 12/06/2021 05:58:00 PM.
30-2021-01213679-PR-LA-CJC - ROA # 37 - DAVID H. YAMASAKI, Clerk of the Court By Belen Morales, Deputy Clerk.

**DE-150**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|
| P. Szanto<br>11 Shore Pine<br>Newport Beach CA 92657<br>ATTORNEY FOR (Name): pro se | 949-478-2228 | **EXHIBIT A** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE |
|---|
| STREET ADDRESS: 700 Civic Center Dr. W. |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Santa Ana CA 92701 |
| BRANCH NAME: Central Justice Center |

ESTATE OF (Name): SUSAN SZANTO
DECEDENT

**LETTERS**

☐ TESTAMENTARY
☒ OF ADMINISTRATION
☐ OF ADMINISTRATION WITH WILL ANNEXED
☐ SPECIAL ADMINISTRATION

CASE NUMBER: 30-2021-01213679 PR LA CJC

**LETTERS**

1. ☐ The last will of the decedent named above having been proved, the court appoints (name):
   a. ☐ executor.
   b. ☐ administrator with will annexed.

2. ☒ The court appoints (name): P. Szanto
   a. ☒ administrator of the decedent's estate.
   b. ☐ special administrator of decedent's estate
      (1) ☐ with the special powers specified in the Order for Probate.
      (2) ☐ with the powers of a general administrator.
      (3) ☐ letters will expire on (date):

3. ☒ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☐ with full authority
   ☒ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☒ The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

Date: 12/06/2021
DAVID H. YAMASAKI, Clerk of the Court
Clerk, by
(signature)
(DEPUTY)
Belen Morales

**AFFIRMATION**

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. ☒ INDIVIDUAL: **I solemnly affirm** that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY (name):
   **I solemnly affirm** that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. (Name and title):

4. Executed on (date): 1 Dec 2021
   at (place): IRVINE, California.

▶ /s/ signed electronically P.Szanto
(SIGNATURE)

**CERTIFICATION**

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

(SEAL)
Date:
Clerk, by
(DEPUTY)

Form Approved by the Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]
For your protection and privacy, please press the Clear This Form button after you have printed the form.

**LETTERS**
(Probate)

Probate Code, §§ 1001, 8403, 8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

[Print this form] [Save this form] [Clear this form]








**United States Postal Service — Click-N-Ship®**

US POSTAGE — Flat Rate Env — U.S. POSTAGE PAID Click-N-Ship®
9405 5036 9930 0597 9175 06 0096 5000 0058 2001
09/01/2023   Mailed from 92657   986748386374047

**PRIORITY MAIL®**

PETER SZANTO
11 SHORE PINE
NEWPORT BEACH CA 92657-1544

Expected Delivery Date: 09/05/23
0001
C015

CORONA DEL MAR CA 92625
SEP - 1 2023

US DISTRICT COURT US DISTRICT COURT
DISTRICT OF WYOMING
STE 2131
2120 CAPITOL AVE
CHEYENNE WY 82001-3658

**USPS TRACKING #**

9405 5036 9930 0597 9175 06

Electronic Rate Approved #038555749