Margaret M. Vierbuchen
Wyoming Bar No. 8-6767
Assistant United States Attorney
United States Attorney's Office for the District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
margaret.vierbuchen3@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| **v.** | **Case No. 23-CR-95-SWS** |
| **PETER SZANTO,** | |
| Defendant. | |

---

### Government's Notice of Intent to Introduce Evidence Governed by Fed. R. Evid. 404(b)

---

The United States of America, by and through Assistant United States Attorney Margaret Vierbuchen, hereby gives notice of its intent to introduce evidence at trial that may be governed by Rule 404(b) of the Federal Rules of Evidence. By providing this notice, the government does not concede that this evidence is subject to Rule 404(b).  Rather, the government believes the noticed evidence is intrinsic evidence relevant to the scheme to defraud alleged in Count 2 of the Indictment and is therefore not subject to Rue 404(b) analysis.[1]  Nonetheless, out of an abundance of caution, the United States files this Notice.

---

[1] As the Court and counsel are aware, the government intends to pursue a superseding indictment clarifying the nature and scope of the bankruptcy scheme alleged in Count Two of the Indictment. (ECF No. 1). The superseding indictment will be based on the discovery already provided to the Defendant and there will be no surprise through clarifying the theory of the charge.

## I.      Introduction and Factual Background

On July 19, 2023, an Indictment was returned by a District of Wyoming grand jury, charging the Defendant with one count of making a false statement in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(2); a bankruptcy fraud scheme, in violation of 18 U.S.C. § 157; and falsification of records in a bankruptcy, in violation of 18 U.S.C. § 1519. (ECF No. 1.)   On August 8, 2023, Special Agents of the Federal Bureau of Investigation ("FBI") arrested the Defendant at his former home in Newport Beach, California. (ECF No. 11.) On August 9, 2023, the Defendant was released on an unsecured appearance bond of $25,000.00, with pre-trial release contingent upon certain conditions, including GPS monitoring. (ECF No. 17.) Trial is currently set for April 1, 2024. (ECF No. 63.).

At trial, the United States expects to prove the following:

In June 2001, Peter Szanto purchased 11 Shore Pine Dr., Newport Beach, CA, 92657 (the "Newport Beach Property").[2]   In October 2003, the Defendant obtained a loan from Washington Mutual Bank, FA ("WaMu") in the amount of $1,000,000.00, secured by a deed of trust against the Newport Beach Property (the "Loan"). Notably, the Loan is in Peter Szanto's name only, thought he was married to Susan Szanto when he obtained the Loan.[3]   In 2008, after WaMu failed and was taken into receivership by the Federal Deposit Insurance Corporation ("FDIC"), JPMorgan Chase ("Chase") acquired WaMu's assets from the FDIC. The Defendant's loan was

---

[2] The Defendant has described the Newport Beach Property as a two-story, Mediterranean villa, with either five or four bedrooms, 4.5 baths, and 3,979 square feet with ocean views.  *See In re Debtor Peter Szanto,* 13bk51261 (D. Nev. Bankr.), ECF Nos. 128 at 3 & No. 694-1.

[3] In 2006, Szanto took out a second loan against the Newport Beach Property from Countrywide Home Loans Inc. in the amount of $1 million.  Bank of America later acquired this loan.  *See In re: Peter Szanto v. Bank of America, N.A.*, 2018 WL 2059601, (B.R. Rptr. Apr. 30, 2018) (summarizing loan history and finding Szanto's claims of a loan modification with BoA are unsubstantiated). Although Szanto later defaulted on this loan as well, the prosecution focuses primarily on his default on the Loan with Chase.

among those assets.  Defendant defaulted on the Loan in 2009, and his default remained uncured. As such, Chase sought to foreclose on the Newport Beach Property over the course of several years.[4]

In an effort to thwart the lawful foreclosure of his million-dollar home, the Defendant weaponized the bankruptcy system by filing five bankruptcy petitions in the following federal courts and years: the Central District of California (CDCA) on February 7, 2013 (where the Newport Beach Property is located and where Szanto claimed to live), in the District of Nevada (DNV) on June 25, 2013 (where Szanto claimed to live), in the District of Oregon (DOR) on August 16, 2016 (where Szanto claimed to live), in the Southern District of California (SDCA) on June 10, 2022 (where Szanto claimed to live), and, in the District of Wyoming (DWY) on July 14, 2022 (where Szanto claimed his wife of 20 years acquired mineral interests in Wyoming of which he only learned about after her death). Doc. 1 at ¶ 2 & 3; *see also In re: Debtor Peter Szanto*, No. 13-bk-11148 (Bankr. C.D. Cal., 2013), Doc. 1; *In re: Debtor Peter Szanto*, No. 13-bk-51261 (Bankr. Nev., 2013), Doc. 1; *In re: Debtor Peter Szanto*, No. 16-bk-33185 (Bankr. Or., 2016), Doc. 1; *In re: Debtor Peter Szanto*, No. 22-bk-01558 (Bankr. S.D. Cal., 2022), Doc. 1; and *In re: Debtor Probate Estate of Susan Szanto*, No. 22-bk-20240 (Bankr. Wyo., 2022), Doc. 1.

As part of his scheme, the Defendant filed each bankruptcy case to obtain the benefit of the automatic stay (pursuant to § 362(a) of the Bankruptcy Code) which prohibits certain creditors from collecting debts (or foreclosing) until further court order. Szanto managed to prevent foreclosure for nine years, while also gaining the benefit of remaining in the property essentially

---

[4] Chase was able to effect foreclosure on August 15, 2022.  Defendant nonetheless refused to vacate the property and spent the next 15 months filing numerous pleadings/actions in state and federal court in an effort to "undo" the foreclosure and/or prevent eviction. Defendant finally vacated the property in late October/early November 2023.

"mortgage-free" since 2009.

Further the government will prove that, as part of his scheme to defraud Chase, Defendant filed with the bankruptcy courts incomplete, inconsistent, or false petitions and financial schedules; he testified falsely or inconsistently at Creditor's Meetings; he failed to comply with requests for documentation by the U.S. Trustee or the Trustee (for instance, he filed monthly operating reports that failed to include bank statements or business documents to support his claims); he filed frivolous pleadings to delay the proceedings, such as by making outlandish claims about his health or the health of his wife to obtain continuances (thereby continuing the automatic stay); he falsely represented his residency, his occupation, his assets and his liabilities as it suited his purpose in manipulating the bankruptcy court in order to obtain the protection of the automatic stay; he submitted false documentation to several bankruptcy courts, to include making repeated false claims that Chase reneged on settlement agreements compromising his Loan when in fact no such settlement agreement occurred; and he failed to make any meaningful payments on his Loan since 2009 despite repeated claims in bankruptcy of his intent to repay his creditors (primarily Chase and Bank of America) "100%" of what he owed.

As noted, the government asserts that while this conduct is all part of his scheme to defraud Chase with the purpose of hindering and obstructing the lawful foreclosure of the Newport Beach Property, much of this conduct also evidences the defendant's intent, motive, common scheme and plan and absence of mistake as well. Furthermore, the continuity of conduct and subject matter throughout the listed bankruptcy dockets shows his identity as the filer of the underlying pleadings.

## II.     Rule 404(b) Legal Standards

Rule 404 of the Federal Rules of Evidence governs character evidence, including crimes and other bad acts. Specifically, "[e]vidence of other crimes, wrongs, or acts is not admissible to

prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. at 404(b)(2); *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) ("list of proper purposes is illustrative, not exhaustive"). Although often viewed as a strong prohibition on evidence of uncharged misconduct, "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *Id.* (internal quotation omitted) (emphasis in original).

"Evidence is properly admitted under Rule 404(b) if four requirements are met: (1) the evidence [is] offered for a proper purpose under Fed. R. Evid. 404(b); (2) the evidence [is] relevant under Fed. R. Evid. 401; (3) the probative value of the evidence [is] not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, instruct[s] the jury pursuant to Fed. R. Evid. 105 to consider the evidence only for the purpose for which it was admitted." *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000) (citing *Huddleston v. United States*, 485 U.S. 681, 691–692 (1988)). Although each requirement must be met, "[t]he standard for satisfying Rule 404(b) admissibility is permissive...." *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009).

"Rule 404(b) limits the admissibility of evidence related to other crimes or wrongs, but it only applies to evidence of acts extrinsic to the charged crime." *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (internal quotation omitted); *see also, e.g., United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997); *United States v. Lambert*, 995 F.2d 1006, 1007–08 (10th Cir. 1993). Therefore, subject to Rule 403 undue-prejudice analysis, evidence of other bad acts intrinsic to the crime charged is not subject to Rule 404(b). *Irving*, 665 F.3d at 1212 (citing

*Lambert*, 995 F.2d at 1007–08). "Other act evidence is intrinsic when [1] the evidence of the other act and the evidence of the crime charged are inextricably intertwined or [2] both acts are part of a single criminal episode or [3] the other acts were necessary preliminaries to the crime charged." *Lambert*, 995 F.2d at 1007 (quotation omitted). Put another way, evidence is intrinsic "if it [is] inextricably intertwined with the charged crime such that a witness's testimony would [be] confusing and incomplete without mention of the prior act." *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (internal quotation omitted).

"[I]f other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *Tan*, 254 F.3d at 1208. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Exclusion of probative evidence under Rule 403 is an "extraordinary remedy and should be used sparingly." *Tan*, 254 F.3d at 1211; *see also Irving*, 665 F.3d at 1213 (applying 403 standard to intrinsic other acts evidence). "The core of unfair prejudice is evidence that invites decision on an improper basis," such as "evidence that impugns the defendant's character or provokes an emotional response in the jury." *United States v. Brooks*, 736 F.3d 921, 941 (10th Cir. 2013) (internal quotations and citations omitted).

### III.    Admissibility of Potential Rule 404(b) Evidence

Although it is the United States position that the evidence proffered below is admissible as evidence of the scheme to defraud alleged in the indictment, this evidence is also admissible under

Fed. R. Evid. 404(b). Specifically, the United States intends to offer the following categories of evidence to show motive, intent, plan, knowledge, identity, or absence of mistake or accident:

1.     Evidence that during the course of the five bankruptcies, Defendant made false statements in petitions, financial schedules and related documents, to include false and inconsistent statements as to his residence, his occupation, his assets, his liabilities and the reasons for filing for bankruptcy. Examples include, but are not limited to:

     a.     In the CDCA Chapter 13 bankruptcy initiated on February 7, 2013, Szanto claimed to live at the Newport Beach Property address. This case was dismissed on May 10, 2013, because the Defendant did not qualify for relief under Chapter 13 or Chapter 11.

     b.     In the DNV Chapter 11 bankruptcy initiated on June 25, 2013, Szanto claimed to live at an address that returned to a Marriott hotel, and reported the CDCA bankruptcy case was dismissed, in part, because he moved to Nevada.

     c.     In the DOR bankruptcy initiated on August 16, 2016, Szanto claimed to live at an address in Portland, Oregon.

     d.     In the SDCA bankruptcy, initiated on June 10, 2022, Szanto claimed to live in in Oceanside, CA. This case was dismissed for lack of venue on July 22, 2022.

     e.     In the DWY bankruptcy initiated on July 14, 2022 (where Szanto claimed his wife of 20 years acquired mineral interests in Wyoming of which he only learned about after her death), Szanto claimed to live at the Newport Beach Property address.

2.      Evidence that the Defendant routinely failed to comply with reporting requirements or requests for information from the United States Trustee's Office.  For instance, in monthly operating reports, the defendant regularly failed to provide records to support the figures reported.

3.      Evidence that Defendant made false and inconsistent statements and representations to various bankruptcy courts and representatives of the U.S. Trustee's Office concerning matters material to the defendant's ability and intent to perform as it relates to the Defendant's proposed Chapter 13 and Chapter 1l Plans, and, plans to repay Chase generally.  For instance, Defendant made claims to the bankruptcy courts of his intent to repay Chase "100%" of what he owes by obtaining alternative financing to repay Chase in full, by renting out the Newport Beach Property, or by reselling the Newport Beach Property, none of which he ever followed through on.  An example includes, but is not limited to:

> a.   At the 341 Creditors Meeting on 9/20/2016 (DOR), defendant testified of his intent to repay creditors by renting out the Newport Beach Property, but also testified that his wife, from whom he is separated, is currently living at the Newport Beach Property and "has multiple sclerosis."

4.      Evidence that Defendant made false and inconsistent statements about the ownership of the Newport Beach Property.  For instance, in the bankruptcies he initiated in the CDCA, the DNV and the DOR, the defendant claimed he owned the Newport Beach Property, that it was not community property and/or that he had a "ante-nuptial/pre-marital agreement" with his wife. By contrast, in the SDCA and the DWY bankruptcies he claimed a 50% interest in the Newport Beach Property, with his deceased wife or the corporate entity bearing her name holding the other 50% interest.

8

5.    Evidence that Defendant made false statements about agreements reached with Chase to compromise the Loan (thereby attempting to reduce how much he owed).  Such false claims resulted in litigation in the bankruptcy courts that necessarily prolonged the proceedings and extended the automatic stay, but also reflect his intent to defraud because such claims are false. Examples include, but are not limited to:

        a.    In the CDCA bankruptcy, he claimed he reached an agreement with Chase in October 2012 to reduce or compromise the Loan;

        b.    In the DNV bankruptcy, he claimed he reached an agreement with Chase in October 2012 and in October 2013 to reduce or compromise the Loan;

        c.    In the DOR bankruptcy, he claimed he reached in agreement with Chase in October 2012, and in October 2016, to reduce or compromise his Loan;

6.    Evidence that Defendant filed frivolous pleadings or pleadings with false statements in various bankruptcy courts with the intent to delay the proceedings, thereby extending the automatic stay.  An example includes, but is not limited to:

        a.    In the DOR bankruptcy, after obtaining a six-month reprieve from the ending of the automatic stay so that he could sell his home, Defendant filed an Emergency Motion to Extend the Stay 13 days before the stay expired, stating under penalty of perjury, that:

> The fact that I have not been able to a complete a sale of my home is because of factors and events beyond my control: I have been ill, had multiple surgeries, been hospitalized, prepared and advocated a defense at a 4 day trial and many other things AND so have been unable to complete sale of my residence.

7.    Evidence that Defendant also disputed every debt, especially mortgages held with Bank of America and Bank of New York as evidence of his intent to defraud and lack of mistake.

8.      Evidence that the Defendant was informed multiple times that his pleadings and purposes in the various bankruptcy proceedings were inappropriate and that, despite that knowledge, he persisted in the same or similar behavior. This evidence shows the Defendant's knowledge, intent, and lack of mistake or accident.  An example includes, but is not limited to:

    a.  On May 9, 2013, U.S. Bankruptcy Judge for the Central District of California Catherine Bauer held a hearing where Szanto appeared. Judge Bauer dismissed the case informing Szanto he did not qualify for Chapter 13 or Chapter 11 bankruptcy.  Specifically, in response to Judge Bauer's observation, "Well, you've got – done a lot in the 13, but you've also known that you don't qualify," Szanto stated, "Well, it wasn't a matter of knowing; it was a matter of I thought I would get more cooperation from the secured creditors." Among other things, Judge Bauer told Szanto:

> You don't qualify for a Chapter 13. You can't do what you're proposing in a Chapter 11, so I'm going to dismiss the case.
>
> . . . .
>
> You are not using the bankruptcy process properly because what you need, it sounds like what you're telling me, you need to have this agreement enforced and that's state court. That's a state court thing.

(May 9, 2013 Hr'g Tr. at 21-22).  Judge Bauer also denied Szanto's request to convert the case to a Chapter 11, stating that he would not qualify for a Chapter 11 either and dismissing the case.

WHEREFORE, the above-described other-acts evidence should be admissible against the defendants, and the government respectfully requests that this court receive such evidence if it is offered at trial.

**DATED** this 6th day of March 2024.

Respectfully submitted,

NICHOLAS VASSALLO
United States Attorney

By:    */s/ Margaret Vierbuchen*
MARGARET VIERBUCHEN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2024, the foregoing was electronically filed and consequently served on defense counsel via CM/ECF.

*/s/ Margaret Vierbuchen*
UNITED STATES ATTORNEY'S OFFICE