# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

In the Matter of the Search of:

**INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS miriamjabotinski@gmail.com, probateesatess@gmail.com, and szanto.pp@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC**

Case No. 23-SM-57-SAH

**FILED UNDER SEAL**

## APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, **Amanda R. Fritz**, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *See* **Attachment A**

located in the Northern District of California, there is now concealed: *See* **Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime.

The search is related to a violation of 18 U.S.C. § 152 (False Oaths and Claims in Bankruptcy) and 18 U.S.C. § 157 (Bankruptcy Fraud).

The application is based on the following facts:

*See* **Attachment C**, Sworn Statement of Special Agent Amanda R. Fritz, which by this reference is incorporated herein.

_Signature of Affiant_
Amanda R Fritz

Sworn to before me and subscribed via telephone,

March 28, 2023     at     Yellowstone National Park, Wyoming
Date                                                         City and State

Stephanie A. Hambrick,
United States Magistrate Judge
Name & Title of Judicial Officer          Signature of Judicial Officer

**EXHIBIT B**

USA v. Peter Szanto-003210

## ATTACHMENT A
## DESCRIPTION OF PERSON OR PROPERTY TO BE SEARCHED

This warrant applies to information associated with Google Accounts miriamjabotinski@gmail.com, probateesatess@gmail.com, and szanto.pp@gmail.com ("the Accounts") that are stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

1

USA v. Peter Szanto-003211

## ATTACHMENT B
## DESCRIPTION OF PROPERTY TO BE SEIZED

I. **Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on October 5, 2022 with the Google Reference Number 25075243, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from **May 1, 2022 to September 30, 2022**, unless otherwise indicated:

    a.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

        3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

        5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

        6.    Length of service (including start date and creation IP) and types of service utilized;

1

       7.    Means and source of payment (including any credit card or bank account number); and

       8.    Change history.

b.    All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, Advertising ID, unique application number, operating system version, Global Unique Identifier ("GUID"), and telephone numbers;

c.    Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.    Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument number or other subscriber number or identity, and payment information) concerning any Google account ever linked to the Account by recovery e-mail address, telephone number, payment information, registration or login IP addresses (during one-week period), registration or login cookies or similar technology, or any other unique device or user identifier, including Advertising ID;

e.    The contents of all e-mails associated with the Account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

f.    The contents of all communications and related transactional records for all Google Services ever used by the Account (such as Gmail, Google Hangouts, Google+, and Google Voice), including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, posts, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);

g.    The contents of all other data and related transactional records for all Google Services ever used by the Account (such as Gmail, Google Hangouts, Google+, Google Voice, Google Contacts, Google Calendar, Google Maps, YouTube, and

2

Android OS), including any information ever generated, modified, or stored by user(s) or Google in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

h.  All records of online search and browsing history associated with the Account or its users (such as through Google Search, Web History, Google Chrome, and Google Analytics, including information collected through tracking cookies);

i.  All records and other information concerning any document, website, or other computer file created, stored, revised, or accessed by the Account or by an Account user (such as using Google Docs, Google Drive, and Google Sites), including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

j.  All records of communications between Google and any person regarding the account, including contacts with support services and records of actions taken

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.  Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. § 152 (Concealment of assets; false oaths and claims; bribery) and 18 U.S.C. § 157 (Bankruptcy fraud), those violations involving Peter Szanto and Miriam Jabotinski/Jabotinsky, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

(a)  Email communications, account creation documentation, and any and all relevant transaction and documents pertaining to Bankruptcy fraud and Concealment of assets/false oaths and claims.;

(b)  Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

3

USA v. Peter Szanto-003214

(c) Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

USA v. Peter Szanto-003215

# ATTACHMENT C
## SWORN STATEMENT OF SPECIAL AGENT AMANDA R. FRITZ IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Amanda R. Fritz being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Cheyenne, Wyoming Resident Agency out of the Denver Division and have been employed by the FBI since 2004. I am currently assigned to investigate white collar and computer-related crimes, including investigations of possible conspiracies to launder money and commit mail and wire fraud. Additionally, I have participated in numerous investigations involving computer and high technology related crimes including computer intrusion, Internet fraud, credit card fraud, and bank fraud. Throughout my FBI employment, I have received training in general law enforcement and in specialized areas including computer crimes. As a Special Agent of the FBI, I am authorized

USA v. Peter Szanto-003216

to investigate crimes involving computer intrusions and other financial crimes stated under federal law, including Title 18 of the United States Code.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 152 (Concealment of assets; false oaths and claims; bribery) and 18 U.S.C. § 157 (Bankruptcy fraud) have been committed by Peter Szanto. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. There is probable cause to believe Peter Szanto did knowingly commit violations of bankruptcy fraud, specifically by giving false oaths/statements in a bankruptcy case to avoid foreclosure of his primary residence.

### I. Background of Investigation

7. On July 12, 2022, Probate Estate of Susan Szanto (the "Debtor"), a Wyoming corporation, filed a chapter 11 bankruptcy petition (the "Petition") in the United States Bankruptcy Court for the District of Wyoming. The Petition was completed, signed, and authorized to be filed

USA v. Peter Szanto-003217

by Peter Szanto, the husband of the late Susan Szanto. At all relevant times, Mr. and Mrs. Szanto resided in California. Mr. Szanto owns two residences in California, one of which is located at 11 Shore Pine Dr., Newport Beach, CA, 92657 (the "Newport Beach Property"), with an estimated value of at least $4,500,000.

8. Mr. Szanto is well known to the federal court system, as well as state court systems, having been found by courts to be a serial and vexatious litigant. Mr. Szanto filed bankruptcy filings in the following courts: (a) Central District of California in 2013 (where the Newport Beach Property is located), (b) in the District of Nevada in 2013, (c) in the District of Oregon in 2016, (d) in the Southern District of California (SDCA) in June 2022, and, most recently, (e) in the District of Wyoming in July 2022. The commencement of a bankruptcy case invokes the automatic stay of § 362(a) of the Bankruptcy Code which prohibits creditors from collecting debts until further Court order.

9. On July 21, 2022, less than two months after filing a pro se bankruptcy petition in the SDCA, U.S. Bankruptcy Chief Judge Christopher B. Latham lifted the automatic stay due to "Debtor Peter Szanto's bad faith" and found that "Debtor Peter Szanto has engaged in a scheme to delay and hinder [JP Morgan Chase's] efforts to foreclose" on the Newport Beach Property. On July 22, 2022, Judge Latham issued an Order dismissing the case for improper venue. On July 26, 2022, Judge Latham issued an Order denying Mr. Szanto's motion for a stay pending appeal. Mr. Szanto's pro se appeal of this dismissal is pending.

10. The Debtor's bankruptcy filing in Wyoming on July 12, 2022, as well as Peter Szanto's bankruptcy filings in other bankruptcy courts and state court filings, is believed to be an attempt by Mr. Szanto to continue his scheme to hinder and delay foreclosure on the Newport Beach Property which has been his residence over the years. Mr. Szanto defaulted on his loan from

USA v. Peter Szanto-003218

JP Morgan Chase Bank over thirteen (13) years ago,[1] his default remains uncured, and he owes more than $2 million on the loan secured by the Newport Beach Property.

## II. The Bankruptcy Fraud Scheme

11. As part of a scheme to hinder and delay foreclosure on the Newport Beach Property, the Debtor was formed in Wyoming on May 22, 2022, which was less than two months prior to Debtor's bankruptcy filing in Wyoming on July 12, 2022. It is believed that the Debtor is effectively a shell company with the Debtor's only asset being an interest in the Newport Beach Property.

12. Regarding the incorporation of the Debtor, at a creditor's meeting on August 16, 2022 held in the Wyoming bankruptcy proceeding, Mr. Szanto testified under oath that he signed the Petition and that he resided in California. Mr. Szanto testified that he did not form the Debtor, but that unbeknownst to him, Miriam Jabotinsky, a long-time friend of his late wife, incorporated the Debtor in Wyoming to preserve mineral interests his wife and Ms. Jabotinsky uncovered while prospecting in Wyoming. Mr. Szanto testified that Ms. Jabotinsky resided in Israel and that he was unaware of her incorporation of the Debtor until he received an email from Ms. Jabotinsky on May 31, 2022, when she "handed [the corporation] over to me to see what I could do." Mr. Szanto denied several times under oath that he had formed the Wyoming corporation.

13. Wyoming Secretary of State records reveal that at 3:44 a.m. on May 22, 2022, a person purporting to be Miriam Jabotinski [sic] made an online filing with the Wyoming Secretary

---

[1] According to a filing with the Wyoming bankruptcy court, JPMorgan Chase represented that in October 2003, Szanto obtained a loan from Washington Mutual Bank, FA ("WaMu") in the amount of $1,000,000.00 ("Loan"), secured by a deed of trust against the Newport Beach Property. In 2008, after WaMu failed and was taken into FDIC receivership, JP Morgan Chase acquired WaMu's assets from the FDIC. Szanto defaulted on the Loan in 2009. It was further represented that "the trustee for the deed of trust securing Peter Szanto's loan from JPMorgan Chase Bank, N.A., has scheduled a sale for the property at 11 Shore Pine in Newport Beach, California for August 15, 2022. The sale was originally scheduled for February 14, 2022.

of State. This filing consisted of the Articles of Incorporation of the Debtor and listed the principal and mailing address of the Debtor as the Newport Beach Property. The filing further identified Jabotinski as the incorporator and "CEO." Jabotinski listed a contact Gmail address as probateesatess@gmail.com ("Target Account 2").

14. During the Wyoming bankruptcy proceeding, it was represented that on May 31, 2022, Miriam Jabotinski, using the Gmail address miriamjabotinski@gmail.com ("Target Account 1"), emailed Mr. Szanto, at the Gmail address szanto.pp@gmail.com ("Target Account 3"), informing him that "I incorporated a Wyoming corporation for Susan's estate to protect her property" and she "hereby appoints Peter Szanto as manager, director and Operations Officer for the continued protection and expansion of The Estate of Susan Szanto." ("Email 1").

15. A copy of Email 1 was provided by Debtor's counsel to the Assistant U.S. Trustee for the District of Wyoming and referenced during Mr. Szanto's testimony on August 16, 2022. Email 1 was written in a foreign language and Mr. Szanto provided the translation of Email 1. According to the translation of Email 1, the email was signed "Miriam Jabotinsky."

16. Although Mr. Szanto testified that Ms. Jabotinsky incorporated the Debtor without his knowledge, also on May 31, 2022, in his capacity as the executor of his late wife's estate, Mr. Szanto signed a California Grant Deed transferring a 50% undivided interest in the Newport Beach Property to the Debtor.

17. At this time, it is unknown if Miriam Jabotinski is in fact a real person, but it is believed that the Wyoming bankruptcy filing and the Wyoming incorporation of the Debtor was another scheme perpetrated by Mr. Szanto to forestall the lawful foreclosure of his Newport Beach Property. After a show cause hearing on August 16, 2022, the U.S. District Court of Wyoming dismissed the Debtor's Petition. The formal order of dismissal was issued on August 17, 2022.

USA v. Peter Szanto-003220

### III. The Google Records

18. On November 14, 2022, pursuant to a 2703(d) order, Google provided responsive records for Target Account 1, Target Account 2, and Target Account 3 (collectively, "Target Accounts") for the time period January 1, 2022 to October 6, 2022. Responsive records did not include the contents of email correspondence, but did include email header information, subscriber information,[2] session times and IP addresses associated with those sessions. According to these records, Target Account 1 was registered to Miriam Jabotinski with a date of birth of July 7, 1954. Target Account 1 was created on July 24, 2022, just 12 days after the Debtor's bankruptcy filing in Wyoming on July 12, 2022.

19. As noted above, Email 1 purports to be an email from Target Account 1 to Target Account 3 that was sent on May 31, 2022; however, according to Google records, Target Account 1 was not created until July 24, 2022. Thus, Email 1 could not have originated and been sent on May 31, 2022 as represented by Mr. Szanto in the Wyoming bankruptcy proceeding.

20. As noted above in paragraph 13, a person purporting to be Miriam Jabotinski listed a contact Gmail address as Target Account 2 on the Debtor incorporation records in Wyoming. According to Google records, Target Account 2 was registered to Po Gee with a date of birth of July 7, 1954. This is the same date of birth listed for Miriam Jabotinski on Target Account 1; it is also the real date of birth for Susan Szanto. Records also reveal that Target Account 2 was created on May 17, 2022, just five days prior to the incorporation of the Debtor with the Wyoming Secretary of State on May 22, 2022.

21. Google records further reflect that Target Account 2 was registered using a SMS telephone number of 949-689-1888. According to T-Mobile records, telephone number 949-689-

---

[2] Based on experience, I know that Google does not verify the subscriber information provided by users of its free internet service.

USA v. Peter Szanto-003221

1888 is subscribed to Peter Szanto, 11 Shore Pine Drive, Newport Beach, CA.

22.   Lastly, Google records reflect that Target Account 3 was registered to Peter Szanto and created on April 19, 2007. A review of Target Account 3 revealed that the account was logged into almost daily with several email communications within the mailbox, indicating that Target Account 3 was utilized often. Records also reveal that an email sent to Target Account 3 from Target Account 1 on July 24, 2022. Although the subject and content of the email was not provided, I believe this email to be the same email located in Target Account 1 mailbox. Furthermore, review of the email communications in the Target Account 3 mailbox revealed no email messages received on May 31, 2022 from Target Account 1 as purportedly stated in Email 1 submitted in the Wyoming Bankruptcy case by Mr. Szanto. In short, I believe Mr. Szanto fabricated Email 1.

### IV.   IP Address Overlap Between Target Accounts

23.   Based on my training and experience, I know every device that connects to the Internet must use an Internet Protocol address ("IP address") and that IP address information can help to identify which devices were used to access the relevant accounts.

24.   Included in the Google records were IP addresses utilized to log into the Target Accounts. A review of the IP address information for the Target Accounts revealed that the same IP address was used to log into the Target Accounts on or near the same time and day, indicating that the same device was used to log into the accounts.

25.   For example, Target Account 1 was created and accessed from IP address 2600:8802:2701:4120:ac8e:ba69:94b9:7a35 on July 24, 2022 at 18:13:04 Zulu time and Target Account 3 was also accessed from the same IP address at 18:30:02 Zulu time, just 17 minutes later.

26.   Similarly, Target Account 2 was created on May 17, 2022 from IP address

USA v. Peter Szanto-003222

2600:8802:2701:4120:6cc9:100b:dd7c:ed1a at 03:30:52 Zulu time. Target Account 3 was accessed from the same IP address at 03:08:31 Zulu Time, approximately 22 minutes prior to the creation of Target Account 2. Furthermore, both Target Account 2 and Target Account 3 were accessed from the same IP address of 2600:8802:2701:4120:bd:724d:e632:7062 on May 24, 2022, at 12:55:55 Zulu time and 22:56:49 Zulu time, respectively.

27.   Therefore, I believe the same individual controls all three Target Accounts and used the same physical device to access the accounts.

28.   Based on the foregoing, and as set forth in the technical and background discussion below, I respectfully submit that there is probable cause to believe that the information associated with the Target Accounts will contain evidence concerning the identity of the user(s) of the accounts. In addition, I also respectfully submit that there is probable cause to believe that the information associated with the Target Accounts will contain evidence that Peter Szanto created these accounts to purposely deceive the courts regarding his bankruptcy filings.

29.   A preservation request was sent to Google on October 5, 2022, for the Target Accounts. In general, an email that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google servers for a certain period of time.

## BACKGROUND CONCERNING GOOGLE[3]

30.   Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and

---

[3] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

USA v. Peter Szanto-003223

productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

31. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

32. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

33. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

34. Google's services include electronic communication services such as Google Voice (voice calls, voice-mail, and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet

USA v. Peter Szanto-003224

searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Drive (cloud storage), Google Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

35. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

36. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

USA v. Peter Szanto-003225

37. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

38. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

39. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

40. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored

USA v. Peter Szanto-003226

communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

41.   In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

42.   Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43.   Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. A list of applications might reveal banking institutions used by the targets. In addition, emails, instant messages, Internet activity, documents, and contact and

USA v. Peter Szanto-003227

calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

44. Therefore, Google's servers are likely to contain stored electronic communications and information concerning Szanto and Jabotinski's use of their Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user(s).

## CONCLUSION

45. Based on the forgoing, I request that the Court issue the proposed search warrant.

46. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## END OF SWORN STATEMENT

13

USA v. Peter Szanto-003228

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed Google LLC ("Google"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google. The attached records consist of _____ [GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

    b.    such records were generated by Google's electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                 Signature

USA v. Peter Szanto-003229