Margaret M. Vierbuchen
Wyoming State Bar No. 8-6767
Assistant United States Attorney
United States Attorney's Office for the District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
Margaret.Vierbuchen3@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Case No. 23-CR-95-SWS |
| **PETER SZANTO,** | |
| Defendant. | |

## GOVERNMENT'S SUBMISSION REGARDING MAY 9, 2024, *FARETTA* HEARING

The United States respectfully provides this submission in response to the Court's scheduling of a Competency hearing and a *Faretta* hearing on May 9, 2024. (ECF No. 159).

### I.  Background

On July 19, 2023, an Indictment was returned by a District of Wyoming grand jury, charging the Defendant with one count of making a false statement in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(2); a bankruptcy fraud scheme, in violation of 18 U.S.C. § 157; and falsification of records in a bankruptcy, in violation of 18 U.S.C. § 1519.[1] (ECF No. 1.)   On

---

[1] A Superseding Indictment was returned on March 13, 2024.  (ECF No. 132.)  The Superseding Indictment alleges the same three violations, though Count Two was superseded to clarify the nature and scope of the scheme alleged and the applicable subsection of 18 U.S.C. § 157.

1

August 8, 2023, Special Agents of the Federal Bureau of Investigation ("FBI") arrested the Defendant at his former home in Newport Beach, California. (ECF No. 11.) On August 9, 2023, the Defendant was released on an unsecured appearance bond of $25,000.00, with pre-trial release contingent upon certain conditions, including GPS monitoring. (ECF No. 17.)

After Defendant's arraignment was continued multiple times to address the issue of Defendant's representation, Mr. Nachbar was appointed by the Court, the Defendant was arraigned, and the Court issued its Discovery and Scheduling Order, setting a trial date of December 18, 2023. (ECFs No. 21, 33, 49, 51).

After the parties jointly moved for a Complex Case Designation, a status hearing was held on November 17, 2023, before U.S. Magistrate Judge Kelly H. Rankin. (ECF Nos. 56 & 61.) With the parties' input, Judge Rankin scheduled an 8-day trial to begin on April 1, 2024, and issued an Amended Discovery and Scheduling Order resetting the parties' pretrial and discovery deadlines. (ECF No. 63.) However, a juvenile matter was also scheduled to be tried before the Court on the same date. (ECF No. 114.) On March 8, 2024, upon the parties' request, the Court held a status conference to discuss scheduling. Because of the impossibility of conducting both trials at the same time, and the special requirements of juvenile matters, defense counsel's need for additional time in light of the Superseding Indictment, and pending motions, the Court rescheduled this matter to May 20, 2024. (*See* ECF Nos. 121 & 145.)

On February 9, 2024, Defendant filed two motions to suppress, ECF Nos. 88 & 90, and a Motion i*n Limine* regarding the government's expert witness testimony. (ECF No. 89.)

On February 20, 2024, Defendant subsequently moved to withdraw his three motions pending a potential plea resolution. (ECF Nos. 92 – 93.) When it became apparent the matter would not resolve by plea as expected, the United States requested a *Frye* hearing. (ECF No. 95.)

2

On March 1, 2024, the Court conducted a *Frye* hearing and scheduled a hearing on Defendant's previously withdrawn motions to March 12, 2024. (ECF No. 127.)

On March 12, 2024, the Court took evidence and heard argument on Defendant's two motions to suppress (Doc. 88 and 90) and took the matters under advisement. (ECF No. 124). On March 19, 2024, the Court issued its oral ruling on these motions.

On March 15, 2024, Mr. Nachbar filed a motion to withdraw. (ECF No. 140.) The Court scheduled an ex parte hearing on the motion for March 27, 2024. (ECF No. 148.) Although Government counsel was not present at this ex parte hearing, the corresponding docket entry for the hearing indicates the Court ordered a competency evaluation following this hearing, and it took Mr. Nachbar's motion to withdraw under advisement. (ECF No. 153.) Recently, the Court appointed expert issued a report finding the Defendant competent to proceed.

As a result of the expert's report, the Court scheduled a Competency hearing and a *Faretta* hearing on May 9, 2024. Again, although Government counsel was not present at the March 27, 2024 hearing, the Court setting for May 9 suggests at that at the March 27 ex parte hearing, Defendant expressed an interest in representing himself.

At the upcoming Competency Hearing, the United States will ask the Court to accept the court appointed doctor's findings and declare the Defendant competent to proceed. The United States understands that the Defendant will agree that he is competent to proceed.

As to the anticipated *Faretta* hearing, should the defendant express a clear and unequivocal desire to represent himself, the United States provides the following legal analysis and request for areas of inquiry, in addition to the standard colloquy suggested by the Benchbook for U.S. District Court Judges. As explained below, this Court must find that the Defendant's desire to represent himself is clear and unequivocal, that he is making the choice knowingly and voluntarily, that his

request has been made in a timely manner and not for the purpose of delay, and that he is "able and willing to abide by rules of procedure and courtroom protocol," before he should be allowed to proceed *pro se*.

**II.       Law**

The Defendant has a Sixth Amendment right to waive appointed counsel and proceed *pro se*. *Faretta v. California*, 422 U.S. 806 (1975). The Tenth Circuit has noted, "the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." *United States v. Hansen*, 929 F. 3d 1238, 1248-49 (10th Cir. 2019). The right, however, is not absolute. For instance, a court may deny a defendant's request to proceed *pro se* or revoke the right in certain circumstances.

Before a defendant is permitted to represent himself, *Faretta* requires the district court to make a record reflecting that the defendant's waiver of his right to counsel is knowing and intelligent and the defendant has an understanding of the magnitude of the undertaking and the hazards inherent in self-representation. *See Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948). A defendant's request to represent himself must be "clear and unequivocal." *United States v. Treff*, 924 F.2d 975, 978 (10th Cir. 1991) (citation omitted). Courts presume a defendant desires legal representation. *See United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017) (citing *Brewer Williams*, 430 U.S. 387, 404 (1977)). Because of this strong presumption against waiver of legal representation, the Supreme Court has stated:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and

4

comprehensive examination of all the circumstances under which such a plea is tendered.

*Von Moltke*, 332 U.S. at 723–24.  A waiver is knowing and intelligent if the defendant "was reasonably informed by the court of the hazards of self-representation and had sufficient understanding of those hazards." *United States v. Turner,* 287 F.3d 980, 984 (10th Cir. 2002). It is the responsibility of the trial judge to ensure that a waiver is knowing and intelligent. *Id.* at 983. The Tenth Circuit has identified the *Von Moltke* factors above as the ideal inquiry, *United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir. 1991), while also acknowledging that there is no precise litany of questions a court must ask a defendant seeking to waive the right to counsel, *Turner,* 287 F.3d at 983.  Instead, "the court should question the defendant as long and as thoroughly as the circumstances of the case demand."  *United States v. Hansen,* 929 F.3d 1238, 1250 (citing *Von Moltke,* 332 U.S. at 723–24).  "The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

A defendant's right to represent himself, however, is not absolute and may be terminated by a court should the defendant "engage[] in serious and obstructionist misconduct," and a court "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834 n. 46. Standby counsel may assist, over a defendant's objections, in "explain [ing] and enforc[ing] basic rules of courtroom protocol or . . . overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984). But the right to self-representation is eroded if standby counsel is allowed, over the

5

defendant's objection, "to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance."[2] *Id.* at 178.

Finally, in addition to making a finding that the request for self-representation is knowingly, intelligently and voluntarily done, the Court must also determine that the defendant has invoked this right unequivocally, in a timely fashion, and he will abide by all applicable rules and procedures. *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006). The Tenth Circuit has not stated a bright line rule to determine when a request for self-representation becomes untimely. *See, e.g., United States v. Smith*, 413 F.3d 1253, 1281 (10th Cir. 2005) (trial court did not err when it denied defendant's request to proceed pro se six days before trial, when case had been pending for a year, had previously been continued, and "involved complex issues that would mandate another lengthy continuance to allow [defendant] to prepare his own defense."), *abrogated on other grounds by*, *Boyle v. United States*, 556 U.S. 938 (2009). However, the Tenth Circuit has noted that "other circuits have held that a request to proceed *pro se* is timely if made before the jury is impaneled and not intended as a tactic for delay." *Tucker*, 451 F.3d at 1180-81 (citations omitted).

### III. Background About the Defendant

To help inform the Court's questioning during the *Faretta* hearing, the United States provides this additional background about the Defendant. The Defendant has no prior criminal record. However, Defendant has testified in an bankruptcy adversary proceeding to have graduated from a law school in California, though he never passed the California bar. He

---

[2] Standby counsel is not the same as hybrid representation (simultaneous self-representation and representation by counsel). The Defendant has no constitutional right to hybrid representation, *McKaskle*, 465 U.S. at 183, but a Court, in its discretion, may permit it. *See Treff*, 924 F.2d at 979 n.6.

represented to U.S. Magistrate Judge R. Michael Shickich that he has "been licensed to practice in several jurisdictions" but he does "not have a license – a current license to practice at the – at the present time." (ECF No. 150 (Tr. of Mar. 18, 2024 Arraignment) at 6.) He has represented in numerous pleadings to have clerked for several courts, both state and federal. Since at least 2009, he has represented himself in numerous state and federal civil and bankruptcy proceedings, to include federal bankruptcy courts in California, Oregon and Nevada. He has also litigated bankruptcy appeals in the Ninth Circuit. One U.S. Bankruptcy Court has described Defendant's pro se skills as follows:

> The Debtor asserted he made errors in his disclosures in complying with the requirements of the Code and being a debtor in possession. I see it differently. This is an experienced, savvy, pro se litigant who has spent years in chapter 13 and 11 between (inaudible). He understands the Rules. He has the capacity and sophistication to find the Rules when he needs to. His shortcomings in disclosure; his transfer of assets postpetition; his filing of bank statements with the U. S. Trustee, which are materially incorrect as compared to the statements produced by the bank; his decision to litigate virtually every third-party subpoena, all add up to a pervasive and inexcusable abuse of the Bankruptcy Code.
>
> *In Re Peter Szanto*, 16-bk-33185, Doc. 334 at 9 (Tr. of Hr'g.) (Bankr. Or. 2017, J.

McKittrick). He has also been found in civil contempt by the same bankruptcy court for violation of bankruptcy court orders. *Id.* at Doc. 571. The Defendant does not appear to have meaningfully prevailed in any civil or bankruptcy case he initiated, though in many instances, his *pro se* litigation did succeed in delaying the normal progression of a case through the court system through the routine filing of frivolous pleadings. It is because of such repeated conduct that he has been found to be a vexatious or serial litigant by a California state court and a federal court. *See, e.g., In re Szanto*, No. AP 3:13-05038, 2016 WL 3209463, at *1 n.3 (B.A.P. 9th Cir., May 31, 2016) (noting Szanto's admission at oral argument that "the California state court found him to be a vexatious litigant"); *In re Szanto*, No. 17-80195, Doc. 6 (9th Cir. Nov. 24, 2017); *In re Szanto* No. OR-22-

1012, 2022 WL 17178502, at *1 (B.A.P. 9th Cir. Nov. 23, 2022) (citing *In re Szanto*, No. 17-80195, (9th Cir., filed Nov. 24, 2017), ECF No. 6).

IV. **Request for Additional Inquiry**

With this legal and factual backdrop, the United States respectfully requests the Court, in addition to the inquiries suggested in the Benchbook, make the following additional, case-specific inquiries of the Defendant to ensure that he appreciates "the hazards and disadvantages of self-representation" should the Defendant continue to express a desire to represent himself:

1. Confirm the Defendant is satisfied with the representation provided by his present counsel, and his request to proceed *pro se* is not the result of any <u>valid</u> complaints he has about present counsel.[3]

2. The Defendant should be warned that the Court will not allow his decision to represent himself to be used as a tactic to delay the proceedings and the Court may decline to grant or revoke his right to do so if it determines that is his intent. The United States provided the bulk of its discovery back in November and December 2023, and has engaged in a liberal production that far exceeds its obligations under Rule 16. For instance, a significant amount of discovery is comprised of publicly available records of filings *made by the defendant* in the five bankruptcy cases involved in this prosecution (and referenced in

---

[3] Although the Defendant does not have an absolute right to counsel of his choice, nor a right to have counsel follow his instructions to the letter, see *United States v. Padilla*, 819 F.2d 952 (10th Cir. 1987), this question is intended to determine whether Defendant's election to proceed *pro se* is knowing and voluntary, and not the result of unstated concerns over the competency of appointed counsel or unstated irreconcilable differences with appointed counsel that might otherwise lead the Court to consider appointing substitute counsel. *See id*. at 955 ("A defendant forced to choose between incompetent or unprepared counsel and appearing *pro se* faces "a dilemma of constitutional magnitude.")

8

Count Two). This case was originally scheduled for trial in December 2023, but was continued and specially set for trial on April 1, 2024.[4] If it is requested that the Court inquire as to how long the defendant is asking to continue the trial date before granting or denying the defendant's request to represent himself.

3. At this stage of the proceedings, some of the Court's deadlines will need to be reset, though some have already passed and pretrial motions litigated. As such, in addition to the dangers of representing himself at trial, there are important pretrial matters and deadlines the Defendant will need to be aware of and comply with. Does the Defendant understand that he will be required to meet these deadlines and follow all the federal rules, procedures and applicable case law for complying with these deadlines? And, that failure to meet these deadlines may have an impact on what evidence will be admissible at trial? Additionally, does he understand that his failure to comply with these deadlines or make required objections/motions may impact what issues are preserved or protected for any appeal?

4. The Defendant should be advised that he will be required to meet the standards of a practicing attorney in dealing with courtroom procedures, applicable rules and case law, and in conducting himself in the courtroom. Does he understand that his failure to comply with these rules, may result in the Court determining he has waived the right to represent himself? For instance, the Defendant, prior to being appointed counsel, filed two pleadings that were without factual or legal basis. (ECF Nos. 26 and 27.) More recently, Defendant has publicly expressed his dissatisfaction with his attorney for not filing a motion to challenge venue that does not appear to have a basis in fact or law. Does he understand that

---

[4] Although a Superseding Indictment was returned on March 13, 2024, it did not result in the addition of new charges or discovery.

just because he represents himself, he is not permitted to file any motion that lacks a legal or factual basis, and that if he persists in doing so, he may lose his right to represent himself? Further does he understand, that filing motions that are not based in law or fact or contain knowing misstatements of fact, could also subject him to enhanced penalties at sentencing in the event he is convicted or may even result in being held in contempt?

5. Additionally, as it relates to trial, does the Defendant understand he will be required to know the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what objections and motions he must make during the trial to permit him to make post-trial motions and protect his rights on appeal, and what constitutes appropriate closing argument to the jury.

6. Whether any threats or promises have been made by anyone to influence the Defendant's decision to represent himself.

7. Finally, should the hearing result in this Court making a finding that the Defendant knowingly, willingly and voluntarily has waived his right to counsel, it is respectfully requested, that the court appoint Mr. Nachbar as standby counsel, not to advise him or provide legal advice, but for the sole purpose of taking over the proceedings, should the Defendant fail to follow federal rules and practice as the Court has admonished him he must.

## V.     RESETTING TRIAL DATE AND DEADLINES

Regardless of whether this Court determines the Defendant is able to represent himself, this Court will need to set a firm trial date, address the resolution of three outstanding notices/motions (ECF Nos. 112, 116, and 140), and set any additional deadlines. The United States

requests that this Court set at least eight trial days (or 1 ½ weeks) for this trial as originally contemplated by the parties. The United States has many witnesses, many of whom are out of state and several of which have upcoming travel plans that take them out of the country for weeks at a time. With these considerations in mind, the United States proposes the following trial dates:

    June 17, 2024—June 27, 2024

    August 5, 2024—August 14, 2024

    September 9, 2024—September 18, 2024

**DATED** this 7th day of May 2024.

        Respectfully submitted,

        NICHOLAS VASSALLO
        United States Attorney

    By:    */s/ Margaret M. Vierbuchen*
        MARGARET M. VIERBUCHEN
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on the 7th day of May, 2024, I served a true and correct copy of the foregoing document upon counsel of record for the Defendant via CM/ECF.

        */s/*