FILED

9:22 am, 6/18/26

**Margaret Botkins**
**Clerk of Court**

# United States District Court

## in and for the Wyoming District

111 S. Wolcott Street - Room 121
Casper, WY 82601

| | |
|---|---|
| United States of America | **Criminal Case: 23-cr-95** |
| Plaintiff | |
| | **Petition Seeking** |
| ***vs.*** | **Change of Venue** |
| | **to U.S. District Court in** |
| Peter Szanto | **Central District of California** |
| Defendant, Probationer | |

Peter SZANTO

4484 Dulin Place
Oceanside CA 92057

*949-887-2369*

WY 23-cr-95

– pg. 1

May it please this Honorable Court.

Comes now Probationer and Defendant, Peter Szanto, seeking change of venue in the within proceeding to the U.S District Court in California's Central District (Santa Ana Division) where this case commenced as action # 23-mj-399.

## 1. **Pre-Filing Efforts to Confer**

After the Court declined to hear Petitioner's request *ex-parte*, Petitioner examined the Court's motion practice rules.

Rule 47.1(b) says the following:

> **(b) Duty to Confer. Except as otherwise ordered, the Court will not entertain any motion unless counsel for the moving party has conferred and made reasonable good faith efforts to resolve the dispute with, or obtain the consent of, opposing counsel prior to filing the motion. The moving party shall state in the motion the specific efforts to comply with this rule and the position of the opposing party. The Court will not consider the motion unless this information is provided. This provision does not apply to cases involving pro se parties, motions to dismiss, motions to suppress or ex parte motions.**

Probationer would qualify as a *pro-se* party so as to avoid conferral.

However, in an effort to expedite matters Probationer believed coming to Court with a pre-agreed Petition would minimize effort by all and save the Court's time.

Multiple times during April and May, Probationer phoned the various persons at the Department of Justice in Wyoming with whom he has become acquainted during the course of this action, attempting conferral.

Unfortunately, after 8 calls by Probationer, leaving messages requesting conferral, no one – **not once, not ever** – returned Probationer's phone calls.

Therefore, Probationer represents that he did make multiple efforts at conferral, but was re-buffed. thwarted and brushed-off in all his attempts.

## 2.  Purpose of this Motion

Probationer suffers from  **advanced kidney disease** and is focused on not dying from that affliction.

During the course of this action, the Department of Justice made inquiry and requested Probationer's medical records.

Probably better than most, papers, exam results and test reports about Probationer's health are easy to find. This is because since 1966, Probationer has always relied on the University of California's heath services. With 10 campuses, health care is readily available. During the last 60 years Probationer has received care and treatment nearly exclusively from the various University of California (UC) medical facilities around California.

The Department of Justice and its Probation Division likely know this to be true. This is because when Probationer's medical records were requested there was no limitation on age of records.

Probationer does not know how many documents were provided, but the bill to Probationer from UC for service to supply those records was $822.32.

### a.  *Probationer's Prognosis*

Probationer has no complaints about the care he receives at UC. However, because the world is filled with medical researchers seeking advances in the battle against disease, Probationer would like to visit medical facilities in Europe

and Singapore seeking additional knowledge. Strengthening his strategy in fighting and surviving his kidney disease.

Probationer has extensive knowledge of various medical facilities in numerous countries. Probationer's learning came as follows.

In the years 2016-2020, Probationer's spouse was terminally ill with the very rare affliction of her body being unable to metabolize the essential nutrient iron. During that time, Probationer 'pulled out all stops' and took his wife to many research facilities in Europe, Israel and Singapore. (The massive amounts of money Probationer spent seeking to keep his wife alive was the primary reason for his Bankruptcy.)

Even though no cure was found, Probationer's spouse's life was prolonged by at least three years. Extra time to enjoy living and teach her grand-kids.

This recitation about Probationer's spouse is meant to demonstrate that after venue change, Probationer will seek the California court's leave so as to travel outside the U.S. Not for frivolous vacation reasons, but based on much experience and information of many medical facilities and health care professionals with whom he has formed acquaintances during his wife's final illness.

### 1.  Financing Medical Care

Probationer has accumulated sufficient airline award miles during the last 60 years to off-set travel and lodging expenses. Based on experience derived from his wife's illness Probationer is aware that foreign medical facilities have payment plans based on need which are very helpful.

### b.  *Ease of Decision Making*

In contemplating any subsequent motion Probationer will likely make seeking the California Court's permission to travel overseas, the thinking is that

one UC medical facility (where Probationer is often treated) is in Orange CA, only about a mile from the Ronald Reagan Courthouse in Santa Ana where this case originated,

Thereby, when Probationer seeks travel permission, some of the medical professionals Probationer has consulted with will be readily available to appear. That is, rather than a Wyoming phone appearance (which can be difficult for any doctor who has a full schedule of appointments, emergencies and walk-ins) a time certain can be arranged  for a short personal appearance at the courthouse only a mile away.

Additionally, the Court is likely aware that a medical professional who testifies about an actual current patient is much more clear and understandable when appearing in person. Plus easier to examine. That is, easier to inquire added details and better to explain medical thoughts in ordinary  language,

### 3. MEMORANDUM

#### a. *Rules Involved*

Federal Rule of Criminal Procedure 21(b) addresses venue:

> **For Convenience. Upon the defendant's motion, the court may transfer the proceeding . . . .against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.**

This parallels and nearly repeats the civil venue rule 28 USC 1404(a):

> **For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.**

Here, Probationer is focused not entirely on only his convenience, but more importantly on the convenience of his witnesses (who will be spared hard

travel) and the court which will be able to hear witnesses in person, see their stature, demeanor and dress (California docs like to wear scrubs 24-7).

For Probationer his convenience is being personally in court and being near his usual medical treatment facility should he have some medical crisis. For example, the first time Probationer went to Casper he was unaware the elevation was 5150 feet above sea-level. Probationer had some trouble breathing. Not knowing any doctors in Casper, Probationer had to settle for a very weak over-the-counter bronco-dilator. This was only stop-gap treatment versus a prescription albuterol inhaler he could have obtained from a nearby doctor familiar with his medical history.

### b. *Convenience is Essential*

For an old man like Probationer, avoiding the possibility of travel going wrong on the way-to or way-back from Casper is part of the convenience which is expected to come from a venue change.

**Venue** may be proper in numerous districts. *United States v. Ringer 300 F.3d 788, 791–92* (2002) accord *United States v. Ochoa,* 229 F.3d 631, 636 (2000)

Here, the California Central District's case as to Probationer started in 2023, case 23-mj-399, is available immediately to continue this matter.

The importance of the venue rules is to "prevent the waste of time, energy and money," and "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Ricoh Co. v. Honeywell, Co.*817 F. Supp. 473, 479 (1993).

The judge in case 23-mj-399 in the California court in 2023 took quite some time to familiarize herself with matters, and will have no trouble continuing her participation.

Because there are no issues of guilt to consider, the transfer would be entirely for the convenience of the California court, the witnesses and Probationer.

There is benefit also to Wyoming! The Court will have one less case in its work load to monitor and supervise. There are no venue restrictions in the local rules to hinder transfer to California.

There is no detriment to the venue change.

### 3. **Conclusion**

Venue change now will move matters forward to the actual goal of this petition which is that Probationer obtaining the best health care he can so he does not die.

Signed at Oceanside  CA.

DATED June 17,  2026 _____Peter Szanto

## **SERVICE**

Service is accomplished on filing when the Court's ECF system Electronically delivers these papers to all participants.

WY 23-cr-95                                                                                      – pg. 7