FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2026 NOV 10 PM 3:10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

UNITED STATES OF AMERICA,

Plaintiff,

v.

PETER SZANTO,

Defendant.

Case No. 23-CR-95-SWS

## ORDER GRANTING EARLY TERMINATION OF SUPERVISED RELEASE

Defendant Peter Szanto pled guilty to one count of engaging in a bankruptcy fraud scheme. (ECF Nos. 165, 166.) He was sentenced to time served and a $7,000 fine, and he commenced a three-year term of supervised release in August 2024. (ECF No. 195.) Having now completed a bit more than two years of his supervision term, Mr. Szanto asks the Court to be released from the remainder. (ECF No. 213.) The U.S. Probation Office provided an update concerning Mr. Szanto's progress and behavior while under supervision. (ECF 214.) The Government filed an opposition to Mr. Szanto's motion (ECF 215), and Mr. Szanto replied (ECF 218). And at the Court's request, Mr. Szanto supplemented his motion with some financial disclosures, which the Court has reviewed in considering this matter. (ECF Nos. 219-222, 224.)

"Under the Sentencing Reform Act of 1984, supervised release serves as a transitional period between incarceration and freedom. While on supervised release, a criminal defendant must comply with various conditions." *Rico v. United States*, 607 U.S. 609, 612 (2026) (internal citation omitted). Title 18 U.S.C. § 3583(e) allows the Court to terminate supervised release early when it is warranted by the Defendant's conduct and is in the interest of justice. In considering the relevant

factors set forth in §§ 3583(e) and 3553(a), the Court finds early termination of supervision is warranted in this case.

Mr. Szanto has been supervised by the Southern District of California federal probation office for his term of supervised release. His California supervising officer reported that Mr. Szanto is considered a low-risk supervisee, has complied with his conditions of supervision, has no documented reprimands or violations, appears to have followed his supervising officer's directives, and has maintained a cooperative attitude while under supervision. (ECF No. 214 at 1.) Mr. Szanto has also paid off his court-imposed financial obligations, including the $7,000 fine. (ECF Nos. 220, 220-1.)

Mr. Szanto is and has been struggling with chronic kidney disease. He specifically seeks to terminate his supervised release early in order to freely travel internationally to seek "further counseling and treatment" for his medical condition(s). (ECF No. 213 at 2.) His treating nephrologist provided a letter confirming his diagnosis and stating that Mr. Szanto intends to "seek medical care outside of the United States in the event that there are treatments which may improve his kidney function, which is theoretically possible." (ECF No. 222-2.) Mr. Szanto explains:

> Probationer will visit medical practitioners, hospitals and research universities with which he became acquainted during his wife's final illness. Among the facilities whereat Probationer will seek care are: 1) Charite Clinic in Berlin, Germany, 2) Tremli Hospital in Zurich, Switzerland, 3) Davidson Hospital in Jerusalem, Israel, and 4) National University Hospital in Singapore.

(ECF No. 213 at 4.) Of course, he would have greater freedom and flexibility in these travels if he was not under supervision.

The District of Wyoming supervising officer did not support Mr. Szanto's request for early termination and suggested the reasons for the request are largely vague and undefined. (ECF No. 214.) The Government opposed Mr. Szanto's motion because he, at that time, had yet to complete

his court-ordered financial obligations and he had already received a substantial benefit under the parties' plea agreement. (ECF No. 215.) Since these submissions, though, Mr. Szanto has paid in full his financial obligations (ECF No. 220), filed updated financial information at the Court's request (ECF No. 224), had his treating nephrologist confirm his kidney disease diagnosis and intent to seek advanced medical care abroad (ECF No. 222-2), and offered a reasonable amount of detail for his plans to seek treatment internationally (ECF Nos. 218, 222).

This is a close call. Mr. Szanto has not always been helpful or forthcoming with information. For example, in his October 2026 Net Worth Statement, part of Probation Form 48, he identified owning several stocks, such as AT&T and Goldman Sachs, and those stocks show Mr. Szanto obtained them in or before 2001. (ECF No. 224 at 4, 15-18.) Yet the Court knows that in his October 2024 Net Worth Statement, two years earlier, he did not disclose the existence of these stocks. Mr. Szanto's past nondisclosures and lax relationship with facts are a big part of the trouble underlying his conviction in this case. Nonetheless, Mr. Szanto's submission of his updated financial filings (ECF No. 224) shows positive progress in this regard.

The Court finds Mr. Szanto's conduct on supervised release is the most significant factor in his favor. His District of Southern California supervising officer reports he has been cooperative and compliant, and he has supplemented his motion with additional information as requested by the Court. He unquestionably obtained a significant benefit from his plea agreement, but the Court finds nothing to suggest that additional time under supervision would further the rehabilitative ends of supervised release. *See United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

Finally, Mr. Szanto has filed another motion, this one "requesting a Brady ORDER directed to the Wyoming Office of the Department of Justice to produce and to handover to the Court **ALL**

medical and educational records of Peter Szanto now in its possession." (ECF No. 223 at 2 (emphases in original).) Mr. Szanto asserts his own "education and health history" constitute exculpatory evidence that must be turned over to the Court under *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.*) He argues his education and medical records have been held by the Department of Justice since 2023 and "should have been handed over to the Court to facilitate" his motion for early termination of supervised release. (*Id.* at 3.) This motions will be denied for several reasons. First, discovery, including *Brady* material, is not disclosed to the Court; it is required to be disclosed to the opposing party. Second, the prosecution cannot unlawfully suppress evidence that is "already known by and available to [defendant] prior to trial," *McGregor v. Gibson*, 219 F.3d 1245, 1253 (10th Cir. 2000); Mr. Szanto has never suggested he did not already know or have ready access to his own education and medical records. Finally, *Brady* requires the prosecution to disclose "evidence favorable to the accused" that is "material either to guilt or to punishment," *Brady*, 373 U.S. at 87, but Mr. Szanto has not demonstrated how his education and medical records might be favorable to him and material to guilt or punishment, particularly considering the issue before the Court is early termination of supervised release.

**IT IS THEREFORE ORDERED** that Defendant Peter Szanto's motion for early termination of supervised release (ECF No. 213) is **GRANTED**, and Mr. Szanto is hereby discharged from supervised release, effective immediately.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED**.

**ORDERED:** November 10th, 2026.

Scott W. Skavdahl
United States District Judge